# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-4062-CR-C-BCW |
| ) | |
| RAVID DONALD SMITH JR., et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Defendant Clifford Andrew Lake filed a motion to suppress statements he allegedly made to police officers following his arrest in Columbia, Missouri, on October 28, 2013. (Doc. 39).[1] The Government has filed its response in opposition. (Doc. 46). Defendant Lake has also filed reply suggestions in support of his motion to suppress statements. (Doc. 52).

On November 7, 2013, the Grand Jury returned an indictment charging defendants Ravid Donald Smith Jr., Lemont Michael Livingston, and Clifford Andrew Lake, with conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. 25).

On February 20, 2014, the Court held a hearing on the defendant Lake's motion to suppress and heard testimony from arresting officers, Detectives Tim Giger of the Columbia Police Department and Drug Enforcement Administration (DEA) Special Agent Steve Mattas. The testimony related to events that occurred leading up to and after defendant Lake's arrest at the residence located at 2005 Rashid Court, Columbia, Missouri, in the early hours of October 28, 2013.

In his motion, defendant Lake argues that incriminating statements he allegedly made to law enforcement officers during the course of his detention and arrest were not voluntary in that the prosecution failed to bring defendant before a magistrate judge without reasonable delay, that his statements were made prior to defendant's presentment to a magistrate, and prior to defendant being represented by counsel. Defendant Lake further argues that his statements were

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

obtained in violation of his Fourth and Fifth Amendment rights.  The Government disagrees and asserts that defendant Lake's incriminating statements made during his interview with police were voluntary after a valid waiver of his rights under Miranda.  The Government argues that there was probable cause to arrest defendant Lake in light of the police's prior knowledge of defendant's drug-related activity, credible informant information, and evidence gathered surrounding the execution of a search warrant on the morning of defendant's arrest.

## **FACTUAL BACKGROUND**

Prior to his arrest, the Columbia Police Department's knowledge of defendant Lake began in 2011.  According to Detective Tim Giger's testimony at the hearing, he knew defendant had been involved in heroin-related activity and had witnessed him under the influence of heroin.  Detective Giger also testified that defendant Lake had previously served as a confidential source for the Columbia police in 2011.  In January 2013, six or seven months since the Columbia Police Department's last contact with defendant Lake, police began receiving information indicating that codefendant Lemont Michael Livingston sold heroin obtained during trips to St. Louis, and determined that Livingston resided at 2005 Rashid Court.  In September of 2013, a confidential source gave police officers information linking defendant Lake to the distribution of heroin and to an individual named "Michael".  Police then made a controlled purchase of heroin at 2005 Rashid Court later that month with the assistance of a second confidential informant.  Although an individual other than defendant Lake sold the drugs to the confidential informant, police learned that both defendants Lake and Livingston were present at the residence during the sale.  The source who assisted with this transaction also told police that Livingston was accompanied by an individual on two trips to obtain heroin to sell in Columbia.  Police later believed the identity of the accompanying individual to be defendant Lake.  Detective Giger testified that both informants had previously provided them truthful information.

Acting on this information, Detective Giger obtained a state search warrant for Livingston's residence, which he executed with the assistance of other members of the Columbia Police Department and DEA Special Agent Mattas at approximately 7:00 a.m. on October 28, 2013. Livingston, who was being tracked by law enforcement with the assistance of a ping order issued by a court on his cell phone, was pulling up to his residence in his BMW after a trip to Chicago at the time officers served the search warrant.  Officers detained Livingston outside the residence and proceeded to search both his house and his car.  Police noted that they knocked on

2

the door of the residence and announced their presence, heard someone moving about within the home, and received no response. DEA Special Agent Mattas then breached the front door. At the hearing, Special Agent Mattas testified that he encountered defendant Lake once inside Livingston's residence and that Lake appeared to have just awoken from sleeping on the couch. Officers detained Defendant Lake while they completed a search of Livingston's house. No other occupants were found inside the residence.

During the search of the residence, police seized a shoe string, an injection needle, and a spoon, items commonly used to ingest heroin that were found on the kitchen table lying next to defendant's Missouri identification card. From a backpack containing clothing and a shaving kit, police recovered electric scales, sandwich bags, and several injection needles, items believed to be used to ingest or distribute heroin. Officers concluded that the backpack belonged to defendant Lake as he was the only guest present in the home. A stolen 9mm pistol and a drug ledger were recovered from Livingston's bedroom. From other rooms in the house, officers recovered bottles of pills and a digital scale, all believed to be used in the distribution of heroin. Police also seized a backpack containing 200 grams of heroin that was found in Livingston's car.

The police then arrested defendant for suspected involvement in the distribution of heroin, took him to the Columbia Police Department, and brought him to an interrogation room where defendant's videotaped interrogation with Detective Giger and Special Agent Mattas took place beginning at approximately 8:25 a.m. Prior to questioning defendant Lake, Detective Giger advised defendant of his <u>Miranda</u> rights. Defendant Lake then stated he was willing to talk with police. Incriminating statements allegedly made by defendant during the videotaped interrogation are the subject of defendant's motion to suppress. During the interview, defendant admitted to using heroin, to selling heroin to support his own use of the drug, and to selling up to ½ gram of heroin for a range of $75 to $100. Defendant also stated that he obtained heroin from Livingston. A review of the videotaped statement together with testimony from Detective Giger and Special Agent Mattas reveals no threats or promises were made by the officers; defendant did not appear to be under the influence of narcotics or alcohol; and the statements appear to have been made freely, and voluntarily.

# **LEGAL ANALYSIS**

For an incriminating statement to be admissible, as governed by 18 U.S.C. § 3501, it must be voluntary. Section 3501(b) lists the following factors to be considered in the voluntary determination:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

Supra. No single factor is conclusive in the voluntary analysis. Id. This section also provides that a confession will not be inadmissible solely on the basis of delay in presentment to a magistrate judge when the confession is found by a trial judge to have been made voluntarily within six hours of the arrest or detention, and the weight of the confession will be given to the jury. Id. Statements made in detention or custody can also involve application of the rule in McNabb-Mallory, 318 U.S. 332 (1943), rendering statements made in detention inadmissible where defendant was not promptly presented to a magistrate. However, the Supreme Court determined that Section 3501 limits the McNabb-Mallory presentment rule so that it applies only when a pre-presentment statement was made beyond six hours of the arrest. Corley v. United States, 556 U.S. 303, 322 (2009).

Furthermore, the Fifth Amendment of the United States Constitution prohibits compelling self-incriminating statements in criminal cases. U.S. CONST. amend. V. This privilege, however, excludes voluntary confessions. United States v. Washington, 431 U.S. 181, 186-87 (1977). The United States Supreme Court in Miranda provided a test for voluntariness as it relates to self-incriminating statements made during custodial interrogations, to account for inherently compelling pressures in that context. 384 U.S. 436, 444 (1966). While in custody, a suspect must first be advised of his rights under Miranda before questioning, including the right to the presence of an attorney. Id. For a confession made in custody to be admissible, the government has the burden to establish by a preponderance of the evidence that the totality of the

circumstances show the defendant to have voluntarily, knowingly, and intelligently waived his or her Miranda rights. United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999). When reviewing the circumstances surrounding the defendant's statement, the court considers the background, experiences, and conduct of the defendant. Id. To find a valid waiver, the Miranda analysis requires both an uncoerced choice and sufficient comprehension by the defendant; specifically, that defendant was fully aware of the nature of the rights abandoned and the consequences of doing so. Moran v. Burbine, 475 U.S. 412, 421 (1986).

Here, defendant's statements made to law enforcement within two to three hours of his initial detainment while officers executed the search warrant at Rashid Court were voluntary. Defendant Lake, who has had previous experience with the law enforcement, was given his Miranda rights and acknowledged his understanding of those rights before questioning, as shown in the video recording of his interview. The Government states in its brief that defendant was first advised of his rights at the scene when officers executed the search warrant. Detective Giger and DEA Special Agent Mattas testified that in their contact with him, defendant Lake was not threatened, coerced, or made promises regarding charges that would be brought. There is no evidence before this Court to suggest that defendant Lake was coerced or that he was not aware of his rights or the consequence of his wavier of them. Defendant Lake was then brought before the undersigned on the morning following this interview, October 29, 2013.

At the hearing, defendant argued that at the time the officers advised him of his Miranda rights, he was detoxing from recent drug use. However, this Court is persuaded by the credible testimony of the arresting officers. Both officers present during the interrogation testified that defendant was coherent during the interview although he appeared to be sleepy and cold, which is consistent with their testimony that defendant appeared to have just awakened before their initial contact with him at 2005 Rashid Court. From the video of his interview, when defendant Lake acknowledged his understanding of the Miranda warnings, he did not appear to be under the influence of any substance.

Moreover, this Court finds no basis to suppress defendant's statements while detained at the Columbia Police Department under a violation of prompt presentment theory. Defendant Lake's confession was voluntary and well within six hours of his arrest. Corley, 556 U.S. at 322 (confessions made voluntarily, before presentment, and within six hours of arrest are admissible subject to other Rules of Evidence).

5

Thus, in reviewing the totality of the circumstances surrounding defendant Lake's statements to law enforcement officers on October 28, 2013, the Court concludes that the statements were made voluntarily under Section 3501 after a voluntary, knowing and intelligent waiver of his Miranda rights. The videotaped interview together with the officers' testimony more than satisfies the government's burden of proof.

Finally, officers had probable cause to arrest defendant Lake for heroin-related activity. The existence of probable cause for an arrest depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. Maryland v. Pringle, 540 U.S. 366, 369-71 (2003). This analysis involves an inquiry whether such facts would cause a man of 'reasonable caution' to believe an offense has been or is being committed. United States v. Gipp,147 F.3d 680, 687 (8th Cir. 1998) citing Carroll v. United States, 267 U.S. 132 (1925). Probable cause can be found where there is "a probability or substantial chance of criminal activity". United States v. Torress-Lona, 491 F.3d 750, 756 (8th Cir. 2007) quoting United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005). In reviewing the facts known to the arresting officer, the Court considers events leading up to the arrest from the view point of an objectively reasonable officer. Pringle, 540 U.S. at 371.

Leading up to defendant Lake's arrest in this case, defendant had a relationship with law enforcement prior to his arrest; police knew defendant as a past confidential informant and as an individual who had previously been involved with heroin-related activity. Two informants, who previously had provided law enforcement officers with truthful information, indicated defendant was currently involved in heroin-related activity, associated with an individual suspected of drug trafficking, and that defendant accompanied the same individual on a trip to obtain heroin. Defendant had also been present during a controlled buy of heroin coordinated by law enforcement. On the morning of his arrest, defendant Lake was the only occupant found in codefendant Livingston's home when Livingston was returning home with drugs in his car. Officers could hear movement within the residence before breaching the door after receiving no response to their announcement. Items founds within the home were consistent with drug distribution; particular items used to ingest heroin were recovered next to defendant's state I.D. card on the kitchen table. From these circumstances collectively known at the time of defendant's arrest, it was entirely reasonable for arresting officers to conclude that there was probable cause to believe defendant Lake had engaged in a conspiracy to possess heroin with the

intent to distribute.  See United States v. Morgan, 997 F.3d 433, 435 (8th Cir. 1993) (court may consider knowledge of all officers involved in determining the existence of probable cause to make a warrantless arrest).

## **CONCLUSION**

For the reasons set forth above, statements arising from defendant's arrest are not rendered inadmissible in that they were voluntary, and were not obtained in violation of defendant's constitutional rights under the Fourth and Fifth Amendments.

Accordingly,

IT IS, THEREFORE, RECOMMENDED that defendant's motion to suppress be DENIED.  (Doc. 39).

Counsel are reminded they have fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections.  A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 19th day of March, 2014, at Jefferson City, Missouri.


/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge